J-S69003-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DENNIS LEE WALLS, SR., | |
| Appellant | No. 766 MDA 2018 |

Appeal from the PCRA Order Entered April 4, 2018
In the Court of Common Pleas of Adams County
Criminal Division at No(s): CP-01-CR-0000288-2015

BEFORE:  BENDER, P.J.E., LAZARUS, J., and MURRAY, J.

MEMORANDUM BY BENDER, P.J.E.:            **FILED DECEMBER 28, 2018**

Appellant, Dennis Lee Walls, Sr., appeals from the post-conviction court's April 4, 2018 order denying his first, timely petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  After careful review, we affirm.

In December of 2015, Appellant was tried before a jury for various offenses, including rape.  The testimony of the victim in this case, J.D., can be summarized as follows.   J.D. testified that she was in a relationship with Appellant for approximately two years, but they had broken up on March 2, 2015.  N.T. Trial, 12/8/15, at 36, 37.  Nevertheless, Appellant was still living with J.D. on March 7th of that year.  *Id.* at 37.  That day, J.D. went to work and when she got home, she lay in bed with Appellant, who was watching a movie.  *Id.* at 38, 39.  J.D. testified that Appellant began rubbing her stomach

and she told him to stop. *Id.* at 39. At that point, Appellant got up and walked out of the room, and J.D. went to sleep. *Id.*

J.D. claimed that she awoke a short time later and saw Appellant "sitting … oddly" on the bed like he was "lost." *Id.* at 40. J.D. asked Appellant what he was doing, and Appellant "got angry. He leaned down and came up with a gun[,]" which he "put … to the side of [J.D.'s] head." *Id.* Appellant cocked the gun and repeatedly said, "didn't I tell you not to fuck with me[?]" *Id.* at 42. J.D. testified that she was terrified for her life. *Id.* Appellant then "told [J.D.] that [she] had a choice to be with him or to be dead[,]" at which point she "started to cry, but [she] told him that [she] would be with him." *Id.* at 43.

Appellant then "put the gun in his own mouth and said that he was going to kill himself." *Id.* J.D. tried to calm Appellant down, but she "started crying bad." *Id.* at 44. Appellant put the gun on his lap and tried to comfort J.D. *Id.* J.D. claimed that Appellant eventually put the gun on the floor, hugged her, and told her that "his boys" - whom J.D. believed meant members of a gang to which Appellant belonged - "knew who [J.D.] was, where [she] lived, who [her] son was, where [her] parents lived, and that if [she] told someone, that they'd come after [her], that they were going to be calling and checking in on him and if he didn't answer his phone, then they would know [J.D.] called the cops and they'd come after [her]." *Id.* at 45.

J.D. testified that Appellant then moved the gun underneath the nightstand about three to four feet away from her and told her "that he wanted

- 2 -

to have sex." *Id.* at 48. J.D. told Appellant that she did not want to have sex, but he continued his advances by "trying to take her pants off." *Id.* at 49. J.D. then "told [Appellant] to just get it over with." *Id.* J.D. testified that she relented because she "was scared," based on Appellant's having put a gun to her head, and she was "not going to fight him." *Id.* at 50. Appellant and J.D. had intercourse, during which J.D. "had [her] hands over [her] eyes crying." *Id.* at 51. J.D. claimed that she did not consent to the sexual encounter with Appellant. *Id.* at 52. After intercourse, J.D. testified that Appellant received "two phone calls" that "[h]e said … were from his boys." *Id.* at 54. Appellant told J.D. that he was "going to meet one of them to give the gun back" at a Sheetz gas station. *Id.* at 54, 55. Appellant "got the gun and put it in a plastic bag," after which he took J.D.'s phone "so [she] wouldn't try anything stupid like calling the police." *Id.* at 55.

The next day at work, J.D. told a coworker, Brittany Eline, about the incident, and the coworker called the police. *Id.* at 61. Littlestown Police Officer Gary Gearhart responded to the report. *Id.* J.D. gave Officer Gearhart consent to search a truck that was owned by both J.D. and Appellant, and in the truck, the officer "found the gun in the plastic bag under the driver's seat…." *Id.* at 64, 85. J.D. testified that it was the same gun that Appellant had pointed at her head. *Id.* Upon further inspection of the gun, Officer Gearhart determined that it "was more of a toy gun" that would "shoot little white BBs out." *Id.* at 86. However, the officer testified that the gun looked like a real handgun. *Id.*

Additionally, on March 9, 2015, J.D. reported to police that she was "clearing out possessions in [her] apartment and in the nightstand drawer in a common used bedroom she had discovered a small cloth bag that she thought may have contained drug paraphernalia and some controlled substance." *Id.* at 95. J.D. informed police that the drawer where she discovered the contraband was exclusively used by Appellant. *Id.* at 96. Police ultimately retrieved the bag from J.D., and later testing of several "clear capsules" discovered in the bag revealed that they "contained Fentanyl, a Schedule II controlled substance…." *Id.* at 97, 104. Based on these facts, Appellant was arrested and charged with various offenses.

On December 8, 2015, Appellant's jury trial was conducted. At the close thereof, Appellant was convicted of rape by forcible compulsion, 18 Pa.C.S. § 3121(a)(1); sexual assault, 18 Pa.C.S. § 3124.1; intimidation of a witness, 18 Pa.C.S. § 4952(a)(1); terroristic threats, 18 Pa.C.S. § 2706(a)(1); indecent assault, 18 Pa.C.S. § 3126(a)(1); and simple assault, 18 Pa.C.S. § 2701(a)(3).[1] Appellant was sentenced on April 18, 2016, to an aggregate term of 16 to 34 years' incarceration.

Appellant did not file a direct appeal. Instead, on April 13, 2017, he filed a timely, counseled PCRA petition raising various claims of ineffective assistance of counsel (IAC). On October 23, 2017, the PCRA court conducted

---

[1] Appellant was acquitted of possession of a controlled substance, 35 P.S. § 780-113(a)(16), and possession of drug paraphernalia, 35 P.S. § 780-113(a)(32).

an evidentiary hearing. On April 4, 2018, the court issued an order and opinion denying Appellant's petition. Appellant filed a timely notice of appeal, however he failed to timely comply with the PCRA court's subsequent order to file a Pa.R.A.P. 1925(b) statement. Accordingly, on May 30, 2018, the PCRA court issued a Rule 1925(a) opinion concluding that Appellant's issues were waived, but noting that its reasons for denying his petition were fully set forth in its April 4, 2018 opinion. ***See*** Trial Court Opinion, 5/30/18, at 1.

On June 7, 2018, Appellant filed a "*nunc pro tunc*" Rule 1925(b) statement. Therein, he claimed that he never received the order directing him to file a concise statement. He then reiterated the same IAC claims raised in his PCRA petition, and which were addressed by the court in its April 4, 2018 opinion. Given this record, we decline to remand under Rule 1925(c)(3); instead, we will address the merits of Appellant's claims. ***See Commonwealth v. Burton***, 973 A.2d 428, 433 (Pa. Super. 2009) (holding that, "if there has been an untimely filing, this Court may decide the appeal on the merits if the trial court had adequate opportunity to prepare an opinion addressing the issues being raised on appeal").

Herein, while Appellant sets forth one IAC issue in his Statement of the Questions,[2] in his Argument section, he divides that issue into fourteen sub-

---

[2] Specifically, Appellant states:

> Whether the trial court erred in refusing to grant [Appellant's] request for PCRA relief on the basis of ineffective assistance of

claims of trial counsel's ineffectiveness. Initially, "we note that it has been held that when an appellant raises an extraordinary number of issues on appeal, as in this case, a presumption arises that there is no merit to any of them." *Estate of Lakatosh*, 656 A.2d 1378, 1380 n.1 (Pa. Super. 1995). "Appellate advocacy is measured by effectiveness, not loquaciousness." *Id.*

We also observe that, aside from citing the general legal principles concerning IAC claims at the start of his Argument, Appellant does not cite or discuss *any* legal authority to support his fourteen claims of counsel's ineffectiveness. We remind Appellant that,

> [w]hen briefing the various issues that have been preserved, it is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record **and with citations to legal authorities**. Citations to authorities must articulate the principles for which they are cited.
>
> This Court will not act as counsel and will not develop arguments on behalf of an appellant. Moreover, when defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived.

*Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007) (citations omitted; emphasis added).

---

> [Appellant's] prior counsel, where prior counsel's multiple failures and deficiencies so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

Appellant's Brief at 2.

- 6 -

Notwithstanding the inadequacy of Appellant's brief, we were able to conduct a meaningful review of his appellate claims. We have also reviewed the Commonwealth's brief, the certified record, the applicable legal authority, and the well-reasoned decision of the Honorable Thomas R. Campbell of the Court of Common Pleas of Adams County that was filed on April 4, 2018. We conclude that Judge Campbell's rationale for rejecting Appellant's ineffectiveness claims is supported by the record, and Appellant's legally-unsupported arguments do not demonstrate any error by Judge Campbell in denying his petition. ***Commonwealth v. Morales***, 701 A.2d 516, 520 (Pa. 1997) (citing ***Commonwealth v. Travaglia***, 661 A.2d 352, 356 n.4 (Pa. 1995)) ("This Court's standard of review from the grant or denial of post-conviction relief is limited to examining whether the lower court's determination is supported by the evidence of record and whether it is free of legal error."). Accordingly, we adopt Judge Campbell's decision as our own, and affirm the order denying Appellant's PCRA petition on that basis.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/28/2018

IN THE COURT OF COMMON PLEAS OF ADAMS COUNTY, PENNSYLVANIA
CRIMINAL

COMMONWEALTH OF PENNSYLVANIA        CP-01-CR-288-2015

VS.

DENNIS LEE WALLS, SR.

## OPINION ON DEFENDANT'S MOTION FOR POST CONVICTION COLLATERAL RELIEF

Before this Court is Defendant Dennis Lee Walls Sr.'s PCRA Petition filed on April 13, 2017. For the reasons stated herein, Defendant's request for Post-Conviction Relief is denied.

On December 8, 2015, Defendant was found guilty[1] by jury verdict of Rape by Forcible Compulsion, as a felony of first degree (Count 1)[2]; Sexual Assault, as a felony of the second degree (Count 2)[3]; Intimidation of a Witness, as a felony of the third degree (Count 3)[4]; Terroristic Threats, as a misdemeanor of the first degree (Count 4)[5]; Indecent Assault, as a misdemeanor of the second degree (Count 5)[6]; and Simple Assault, as a misdemeanor of the second degree (Count 6)[7]. On April 18, 2016, this Court sentenced Defendant to serve no less than ten years nor more than twenty years in a State Correctional Institution designated by the State Department of Corrections[8]. On Count 3, this Court sentenced Defendant to serve no less than three and one half

---

[1] This Court notes that Defendant was found not guilty of Possession of a Controlled Substance, 35 P.S. 780-113(a)(16), and Possession of Drug Paraphernalia, 35 P.S. 780-113(a)(32).
[2] 18 Pa. C.S. § 3121(a)(1).
[3] 18 Pa. C.S. § 3124.1.
[4] 18 Pa. C.S. § 4952(a)(1).
[5] 18 Pa. C.S. § 2706(a)(1).
[6] 18 Pa. C.S. § 3126(a)(1).
[7] 18 Pa. C.S. § 2701(a)(3).
[8] For sentencing purposes, Counts 2 and 5 merge with Count 1.

1

years nor more than seven years in a State Correctional Institution designated by the State Department of Corrections. The sentence on Count 3 will run consecutively to the sentence on Count 1. On Count 4, this Court sentenced Defendant to serve no less than one and one half years nor more than five years in a State Correctional Institution running consecutively to the sentence on Count 3. On Count 6, this Court sentenced Defendant to serve no less than one year nor more than two years in a State Correctional Institution designated by the State Department of Corrections. The sentence on Count 6 will run consecutively to the sentence on Count 4. All sentences imposed in this case will run consecutively to any other sentences Defendant may be serving. Defendant filed his PCRA Petition on April 13, 2017 and an Amended PCRA Petition on June 30, 2017. Two PCRA pre-hearing conferences took place on June 19, 2017 and August 24, 2017. A PCRA hearing occurred on October 23, 2017. Defendant's Brief was filed on February 2, 2018 and Commonwealth's Brief was filed on February 22, 2018.

To be eligible for relief under the Post-Conviction Relief Act (PCRA), 42 Pa. C.S. § 9541, et seq., a petitioner must plead and prove by a preponderance of the evidence, *inter alia*, that his or her conviction or sentence resulted from one or more of the circumstances enumerated in 42 Pa. C.S.A. § 9543(a)(2) and that his or her claims have not been previously litigated or waived. *Commonwealth v. Keaton*, 45 A.3d 1050, 1060 (Pa. 2012); *Commonwealth v. Paddy*, 15 A.3d 431, 442 (Pa. 2011).

Petitions for Post-Conviction Relief must be filed within one year of the date the judgment of sentence becomes final, unless the petitioner can show that one of the statutory exceptions is applicable. **42 Pa. C.S. § 9545(b)(1)**. The PCRA specifies that "a

2

judgment becomes final at the conclusion of direct review . . . or at the expiration of time for seeking the review." **42 Pa. C.S. § 9545(b)(3)**. The limitation on the time that a PCRA petition may be filed implicates the court's jurisdiction; thus, a court may not amend or ignore the statutory limitation in order to address the merits of an untimely petition. *Commonwealth v. Bennett*, 930 A.2d 1264, 1267 (Pa. 2007); *Commonwealth v. Johnson*, 803 A.2d 1291, 1294 (Pa. Super. 2002). Here, the petition is clearly timely, so this Court has jurisdiction to consider it.

Defendant alleges that ineffective assistance of counsel "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place."[9] Defendant alleges that his trial counsel, Attorney Jason Gary Pudleiner, was ineffective during pre-trial proceedings and during trial. The Sixth Amendment of the United States Constitution guarantees a defendant the right to assistance of counsel. U.S. CONST. amend. VI. A defendant has a right to effective assistance of counsel during pre-trial proceedings as well as during a trial. *Commonwealth v. Hickman*, 799 A.2d 136, 141 (Pa. Super. 2002); *Commonwealth v. Bedell*, 954 A.2d 1209, 1212 (Pa. Super. 2008). Counsel is presumed effective, and it is the burden of the defendant to produce evidence to prove that counsel was ineffective. *Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987). *See also Commonwealth v. Murray*, 305 A.2d 33, 36 (Pa. 1973). To prevail on a claim for ineffective assistance of counsel, the defendant must plead and prove by a preponderance of the evidence: 1) that his underlying claim has arguable merit; 2) that counsel has no reasonable basis for his or her action or inaction; and 3) that Defendant suffered prejudice because of counsel's

---

[9] 42 Pa. S.C.A. §9543(a)(2)(ii).

3

action or inaction. *Commonwealth v. Hutchinson*, 25 A.3d 277, 285 (Pa. 2011). Prejudice, in regards to ineffective assistance of counsel, means that "there must be a reasonable possibility that but for counsel's unprofessional errors, the result of the trial would have been different." *Commonwealth v. Craver*, 688 A.2d 691, 694 (Pa. 1997)(citations omitted). Failure to satisfy any prong of the test of ineffectiveness requires rejection of the claim. *Commonwealth v. Hill*, 42 A.3d 1085, 1090 (Pa. Super. 2012) (citation omitted).

In Counts A, C, D, and E, Defendant alleges that Attorney Pudleiner failed to call several witnesses both as fact witnesses and as character witnesses. Defendant alleges that Attorney Pudleiner was ineffective for failing to interview and call as witnesses William Walls, Sr.; William Walls, Jr.; Heidi Meek; the Complainant's parents, Jeffrey and Debra Dillman; and Michael Boslett, Defendant's state parole officer.

"Generally, where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests." *Commonwealth v. Howard*, 719 A.2d 233, 237 (Pa. 1998). "Trial counsel will not be deemed ineffective for failing to assert a claim that would not have been beneficial, or for failing to interview or present witnesses whose testimony would not have been helpful." *Id. See also Commonwealth v. Williams*, 732 A.2d 1167, 1189 (Pa. 1999). "Failure of trial counsel to conduct a more intensive investigation or to interview potential witnesses does not constitute ineffective assistance of counsel, unless there is some showing that such investigation or interview would have been helpful in establishing the asserted defense." *Commonwealth v. Pursell*, 724 A.2d 293, 306 (Pa. 1999)(citations omitted).

4

Here, the clear trial strategy was to show that the sexual encounter was consensual. Instantly, Attorney Pudleiner made a strategic decision not to call several witnesses, including character witnesses, because their testimony was either irrelevant or unhelpful to Defendant's case. At the PCRA hearing, Attorney Pudleiner testified that he wrote a letter to Defendant, prior to trial, and specifically stated why he felt that the testimony of Complainant's parents and other witnesses was not relevant.[10] Defendant, on cross-examination, testified that in his letter to Attorney Pudleiner[11] he stated that the Complainant's parents could testify that he was good to their daughter and never put his hands on her.[12]

In essence, Defendant suggested Complainant's parents would testify to his peaceful character as directed to the victim. Defendant admitted that he did not include any factual information, pertaining to the case, to which the Complainant's parents could testify in his letter.[13]

Furthermore, Defendant has a long criminal history with 32 arrests and 26 convictions. Attorney Pudleiner testified that he did not call witnesses to testify to Defendant's character because he felt that due to Defendant's long list of convictions for violent crimes, character evidence stating that Defendant was peaceful would not be helpful to Defendant's case.[14] Defendant himself admitted that he had been convicted of these violent crimes, including a felony law enforcement assault and a felony robbery with a deadly weapon.[15] While evidence of Defendant's crimes constituting crimen falsi

---

[10] PCRA Hearing Tr., pg. 41, October 23, 2017.
[11] *See* Commonwealth's Exhibit 1.
[12] PCRA Hearing Tr., pg. 28, October 23, 2017.
[13] *Id.*
[14] *Id.* at 64-65.
[15] *Id.* at 22-23.

was admitted for a limited purpose, if character evidence of Defendant's supposed peaceful treatment of complainant had been introduced by Defendant then the door would have been opened to admit evidence of Defendant's crimes of violence as well. Attorney Pudleiner was wise to be sure the jury did not hear of Defendant's violent history.

With regard to complainant's alleged reputation for untruthfulness, evidence of a victim's reputation in the community for untruthfulness is a valid line of attack. **Commonwealth v. Butler**, 621 A.2d 630, 632 (Pa. Super. 1993). This may be particularly important where, like here, the Commonwealth's case on the central issue of consent is limited to the credibility of one witness, i.e., the Complainant. See, generally, **Commonwealth v. Harris**, 785 A.2d 998 (Pa. Super. 2001), citing **Commonwealth v. Weiss**, 606 A.2d 439, 442 (Pa. 1992). Therefore, this Court must conclude that the issue has arguable merit as the failure to call available character witnesses may constitute ineffective assistance of counsel. **Id.** So, inquiry turns to whether there was any reasonable basis for trial counsel's decisions to not call Mr. or Mrs. Dillman to testify to Claimant's reputation for untruthfulness. Critically, as explained at the PCRA hearing, Defendant never told Attorney Pudleiner that the Complainant's parents would testify to Complainant's bad reputation for truthfulness. That alone constitutes a reasonable basis for not calling these witnesses. Even if Attorney Pudleiner had called Complainant's parents, they would have only testified to Complainant's general reputation of "sometimes good, sometimes bad" truthfulness.[16] This "in between" reputation for truthfulness by Complainant is not the same as saying she is untruthful.

---

[16] *Id.* at 92

6

The alleged "reputation" evidence is unequivocal at best. Therefore, even if Attorney Pudleiner had been made aware that Claimant's parents might believe her reputation for truthfulness was "in between" it is unlikely that this testimony would have had any impact on the rape by forcible compulsion conviction.

Based on the information or lack of information provided by Defendant to Attorney Pudleiner, in regards to how the Complainant's parents' testimony could help his case, Attorney Pudleiner strategically balanced the pros and cons of having Complainant's parents testify and decided that the information was not relevant or helpful. Thus, Defendant has failed to prove the second prong of the test for ineffectiveness.

In regards to Heidi Meeks, Attorney Pudleiner did converse with her and she was aware of the trial date and indicated to Attorney Pudleiner that she would appear. However, Ms. Meeks never appeared as promised. Attorney Pudleiner had every belief that Heidi Meeks was a friendly witness to the Defendant. Therefore, it was reasonable for Attorney Pudleiner to not subpoena her as a witness for trial. Attorney Pudleiner stated that he may have had her testify regarding the affair between herself and the Defendant but he was going to see how the testimony went and make the decision regarding having her testify then. Also, Heidi Meeks indicated to Attorney Pudleiner that she overheard the Complainant state that "she was going through with the charges because [the Defendant] was cheating on her.[17] Attorney Pudleiner explained that he did not think the jury would find this testimony credible because Heidi Meeks has a bias in favor of the Defendant because she is his girlfriend.

---

[17] *Id.* at 63

7

In regards to Defendant's father, Defendant asserts in his Amended Petition for Post-Conviction Relief that Williams Walls, Sr. would testify to Defendant's good character. At the PCRA hearing Attorney Pudleiner testified that he felt that having character witnesses testify to Defendant's reputation in the community would be detrimental because this testimony could be counteracted by Defendant's history of violent convictions. Therefore, Attorney Pudleiner had a reasonable basis for not calling these witnesses, and these Counts are meritless.

Defendant also alleges that Attorney Pudleiner was ineffective for failing to call Defendant's state parole officer, Michael Boslett, as a witness. Defendant asserts that Mr. Boslett could have testified in regards to Defendant's negative drug tests while on state parole. Attorney Pudleiner testified that he did not want to call Defendant's parole officer because that would highlight to the jury that Defendant was on state parole.[18] Therefore, Attorney Pudleiner had a reasonable basis not to call Mr. Boslett as a witness. This Court notes that Defendant was charged with Possession of a Controlled Substance and Possession of Drug Paraphernalia. A clean drug test history does not necessarily prove Defendant did not possess controlled substances or paraphernalia. In any event, the jury apparently did not believe the portion of complainant's testimony regarding the drugs and paraphernalia being Defendants. "The weight of the evidence is exclusively for the finder of fact, which is free to believe all, part, or none of the evidence, and to assess the credibility of the witnesses." **Commonwealth v. DeJesus,** 860 A.2d 102 (Pa. 2004). Therefore, this issue is without merit.

---

[18] PCRA Hearing Tr., pg. 60, October 23, 2017.

8

Ultimately, Defendant was acquitted of both drug charges, so even if Defendant could show that this issue has arguable merit and that Attorney Pudleiner had no reasonable basis for his inaction, Defendant cannot show that he was prejudiced by Attorney Pudleiner's decision not to call Mr. Boslett as a witness.

Defendant next alleges that Attorney Pudleiner was ineffective for failing to investigate and introduce as evidence Defendant's telephone records. Defendant further alleges that these telephone records would have contradicted the Complainant's testimony regarding phone calls made before, during, and immediately after the alleged incident. However, Attorney Pudleiner had no obligation to present evidence that he believed was unhelpful to Defendant's case. *Howard*, 719 A.2d at 237; *see also Williams*, 732 A.2d at 1189. At the PCRA hearing, Attorney Pudleiner testified that he did not believe that Defendant's phone records would have been helpful to Defendant's case because the Complainant testified in regards to whom she *believed* Defendant was talking.[19] Complainant believed Defendant was speaking to fellow DMI gang members in a way that was threatening to her. Attempting to prove whether Defendant was *actually* speaking with his brother as he suggests and just pretending to be speaking to gang members would not have helped Defendant's case because the issue was what the Complainant *believed* she heard and whether the words were communicated with the intent to terrorize the Complainant. It is irrelevant whom Defendant was actually speaking to if the words that he was saying were communicated with the intent to terrorize the Complainant. The phone records would not have disproven complainant's *belief* of what she heard.

---

[19] PCRA Hearing Tr., pg. 65, October 23, 2017.

9

Focusing solely on the issue of consent, which Attorney Pudleiner viewed as the strongest defense, Attorney Pudleiner testified that he did not want to distract the jury from the good evidence that they had.[20] Despite Attorney Pudleiner's belief that the phone records would not be helpful he, nonetheless, did discuss the phone records with Defendant's brother and attempted to obtain the records from him. Attorney Pudleiner testified that Defendant's brother told him that he was going to get the phone records and send them, but he never did.[21] Again, like with Heidi Meeks, it is Defendant's potential witness who failed to come through for him, not Attorney Pudleiner. Therefore, this issue is meritless.

Defendant alleges that Attorney Pudleiner was ineffective for failing to introduce evidence regarding the Complainant's medical treatment following the incident. Any such evidence is completely irrelevant. The Defendant's theory of the case was that the sexual intercourse in question was consensual. Any medical treatment that the Complainant received would not have contributed to Defendant's defense that the intercourse was consensual, which is why Attorney Pudleiner did not present it. Again, Attorney Pudleiner had no obligation to present evidence that was not helpful to Defendant's case. *Howard, 719 A.2d at 237.* At the PCRA hearing, Attorney Pudleiner testified that all the parties agreed that Defendant and Complainant had sex.[22] Further, Attorney Pudleiner testified that he believed that Complainant's testimony when she told Defendant to "just get it over with" showed consent.[23] Based on Attorney Pudleiner's analysis of the facts of the case and Complainant's testimony, he had a reasonable

---

[20] *Id.*
[21] *Id.* at 74.
[22] PCRA Hearing Tr., pg. 66, October 23, 2017.
[23] *Id.*

10

basis for not obtaining Complainant's medical records. Therefore, Defendant has failed to prove ineffectiveness of Counsel.

In regards to Counts G, J and M, Defendant asserts that Attorney Pudleiner was ineffective for failing to adequately cross-examine the Commonwealth witnesses. Defendant attempts to analyze Attorney Pudleiner's actions with the benefit of hindsight, which distorts the trial counsel's actions in question. Attorney Pudleiner may have utilized an alternative strategy than another counsel might have in regards to cross-examination, but this does not render him ineffective.

In Count G, Defendant alleges that Attorney Pudleiner was ineffective for failing to cross-examine the affiant regarding unfairly prejudicial bias against Defendant. Defendant alleged that the Affiant had a bias against the Defendant because after the assault was reported, including Complainant's perceived threats regarding Defendant's gang connections, and before Defendant was arrested the Affiant offered for the Complainant to stay at his house in case she felt unsafe and showed overall concern for the Complainant's well-being.

> In evaluating the series of claims in this issue, [the Supreme Court of Pennsylvania is] mindful that attorney performance is to be assessed without the distortion of hindsight; rather, [it] must reconstruct the circumstances under which counsel's decisions were made and evaluate counsel's conduct from his perspective at that time.

*Commonwealth v. Birdsong*, 24 A.3d 319, 333 (Pa. 2011). The mere existence of an alternative strategy not pursued by trial counsel does not make counsel's actions or inactions ineffective. *Williams*, 732 A.2d at 1189. "Scope and vigor of cross-examination is a matter which falls particularly within the ambit of sound trial strategy to be exercised by trial counsel alone. That attorneys disagree on trial strategy does not

11

mean that the course chosen amounts to incompetence." *Commonwealth v. Ramsey*, 393 A.2d 806, 812 (Pa. Super. 1978)(internal citations omitted).

In this case, the Affiant did not witness the crimes being committed. He was a relatively minor witness testifying to what happened during the course of his investigation. The Affiant's testimony was consistent with his investigation report. Attorney Pudleiner had no reason to believe that the affiant would have any prejudice against the Defendant. The source of information about potential bias was the Complainant's parents. However, Defendant never indicated to Attorney Pudleiner prior to trial that Complainant's parents had any factual information regarding the affiant's possible biases. Further, nothing presented would indicate that the Affiant had a bias towards the Defendant at the time of investigation or at any time prior to the date of the incident. The Defendant has failed to satisfy his burden of proof with regard to this allegation as it does not have arguable merit.

Counts J and M both discuss Attorney Pudleiner's alleged ineffectiveness for failing to adequately cross-examine any of the Commonwealth's witnesses and the police officers. Defendant does not specifically allege how cross-examination should have been different. Rather, he makes a bald allegation that the cross-examination was ineffective. "Boilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective." **Commonwealth v. Paddy**, 15 A.3d 431, 443 (Pa. 2011). Defendant has not proven the claim has merit. The fact that an attorney would have pursued different trial strategies regarding cross-examination does not make Attorney Pudleiner ineffective. *Williams*, 732 A.2d at 1189. Furthermore, as the central issue on defense

12

was whether or not the acknowledged sexual encounter was consensual, and none of the suggested witnesses had information relevant to that defense, Attorney Pudleiner, hoping to keep matters simple for the jury, chose not to engage in lengthy cross-examination that would distract from the defense theory or alter the jury's focus from that defense. Therefore, Counts G, J, and M are meritless.

Defendant alleges that Attorney Pudleiner was ineffective for failing to secure Sheetz convenience store surveillance video, which supposedly would have shown the interactions between Defendant and Complainant immediately before and after the alleged incident. At the PCRA hearing, Defendant testified that the Complainant had testified at trial that she and Defendant broke up on March 2, 2015.[24] According to Defendant's claims, the Sheetz surveillance video would have shown that on March 5th, 6th, and 7th, he and the Complainant were at Sheetz together kissing.[25] Defendant further argues that if this video were obtained and introduced at trial, the video would have discredited the Complainant's testimony and overall credibility.[26]

This issue is meritless. A careful review of the record leads to the conclusion that Attorney Pudleiner did indeed investigate the Sheetz video footage issue when Defendant asked him to do so. On cross-examination at the PCRA hearing, the Commonwealth questioned Defendant about a letter that Attorney Pudleiner had sent him in regards to the Sheetz video. In his October 16, 2015 letter to Defendant, Attorney Pudleiner informed Defendant that the Sheetz footage had been overwritten and was no

---

[24] PCRA Hearing Tr., pg. 7, October 23, 2017.
[25] *Id.*
[26] *Id.*

13

longer available. Attorney Pudleiner cannot be deemed ineffective for not obtaining video footage that no longer existed.

In addition, in his letter, Attorney Pudleiner explained to Defendant that the footage in the Sheetz video would not disprove anything to which the Complainant was going to testify with regard to whether the sex was consensual. Importantly, at the PCRA hearing, Attorney Pudleiner testified that Defendant never told him that the Sheetz video would have shown that Defendant and Complainant were still together.[27] Also, Attorney Pudleiner added that even if the video showed that, he is unsure of how the video would have been helpful, and by the time he was made aware of the possible footage it was no longer in existence. Again, Defendant has failed to prove the claim has arguable merit.

Defendant alleges that Attorney Pudleiner was ineffective for failing to object to the hearsay testimony of Commonwealth witness Brittney Eline. Hearsay is generally inadmissible unless the statement(s) fall into one of the exception categories.[28] An excited utterance is one such exception and is "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused."[29]

Instantly, the Commonwealth witness Brittney Eline testified in regards to Complainant's excited utterance shortly after the rape. If Attorney Pudleiner would have objected, this Court would have overruled that objection and would have admitted the statements under the excited utterance exception to the rule against hearsay. Because

---

[27] *Id.* at 67.
[28] Pa. R. E. 802.
[29] Pa. R. E. 803(2).

14

Defendant has failed to show that he was prejudiced by Attorney Pudleiner's inaction, this issue fails to satisfy that prong and Defendant is not entitled to relief.

Defendant alleges that Attorney Pudleiner was ineffective for failing to conduct a proper opening statement to the jury. As stated *supra*, the mere existence of an alternative strategy does not mean counsel was ineffective. *Williams*, 732 A.2d at 1189. "Trial counsel's strategic decision to introduce defendant's prior crimen falsi convictions . . . to preempt Commonwealth's less favorable introduction of matters, was reasonable..." *Pursell*, 724 A.2d at 311. At the PCRA hearing, Attorney Pudleiner testified that his strategy in his opening statement was to "develop credibility with myself with the jury...we already decided [the Defendant] would be testifying...so it was going to be coming out that [the Defendant] had a lengthy record."[30] Attorney Pudleiner went on to state that:

> Our whole theory to the case was that he was cheating on [the Complainant] and that [the Defendant] took a toy gun and threw it against a [head board] while [the Complainant] was sleeping. So I wanted to get this stuff out, you know, deal with it ourselves instead of having it be a surprise throughout the trial.[31]

Attorney Pudleiner explained his reasoning and his trial strategy. In accordance with **Williams**, *supra*, the fact that another attorney may have chosen a different strategy regarding opening statements, does not mean that Attorney Pudleiner was ineffective. Therefore, this issue is meritless.

Defendant alleges that Attorney Pudleiner was ineffective for failing to adequately investigate the Complainant's allegations and background prior to trial. Attorney Pudleiner testified that Defendant did not request him to interview or speak to anyone

---

[30] PCRA Hearing Tr., pg. 69, October 23, 2017.
[31] *Id.*

15

regarding the Complainant's credibility.[32] The only way Attorney Pudleiner would have been aware of any witnesses, who could testify regarding Complainant's credibility, would be if Defendant told him about such witnesses. However, as was previously discussed, Defendant only told Attorney Pudleiner that Complainant's parents would testify that the Defendant "was always good to and for his daughter and . . . that [the Defendant] never put [his] hands on [the Complainant]."[33] Defendant never told Attorney Pudleiner Complainant's parents would testify to alleged untruthfulness and Defendant has not identified any other witnesses on the issue. Therefore, it was reasonable for Attorney Pudleiner to not interview Complainant's parents because to Attorney Pudleiner's knowledge, Complainant's parents would only testify to Defendant's character.

Defendant alleges that Attorney Pudleiner was ineffective for failing to adequately consult with Defendant nor discuss possible evidence and witnesses prior to trial.

In **Commonwealth v. Johnson**, the trial counsel represented the Defendant "at his preliminary hearing and criminal arraignment, conducted a face-to-face meeting at his preliminary hearing, conducted another face-to-face meeting at the prison . . .prior to trial, and performed at least one telephone consultation." The Court found that that this was a sufficient amount of contact between the trial counsel and the Defendant and therefore was effective assistance of counsel. *Commonwealth v. Johnson*, 51 A.3d 237, 243–44 (Pa. Super. 2012). Similarly, Attorney Pudleiner testified that he conducted seven phone conferences with Defendant and met with Defendant on four other

---

[32] *Id.* at 40
[33] Commonwealth Exhibit 1 from PCRA hearing on October 23, 2017.

16

occasions prior to trial.[34] There were multiple letters exchanged between them. This is more than adequate and is effective assistance of counsel. Therefore, this issue is meritless.

Defendant alleges that Attorney Pudleiner was ineffective for failing to adequately discuss and prepare Defendant to testify in his own defense at trial. At the PCRA hearing, both Defendant and Attorney Pudleiner testified that the decision for Defendant to testify at trial was discussed and that ultimately the decision was up to Defendant.[35] Again, the Defense theory was that the sexual encounter was consensual. There is no suggestion here as to what more Attorney Pudleiner should have or could have done to prepare Defendant to testify. Again, Defendant's bald assertion of ineffectiveness does not support his burden of proof. **Paddy,** at 443.

Therefore, this issue has no merit. Attorney Pudleiner had at least eleven conversations with the Defendant prior to trial and discussed the fact that Defendant would be testifying. The pros and cons of Defendant testifying were discussed and Defendant still decided to testify.

Lastly, Defendant alleges that all of the cumulative errors complained of should permit Defendant to be successful on his petition. However, "no number of failed claims may collectively attain merit if they do not do so individually." **Commonwealth v. Williams,** 615 A.2d 716, 722 (Pa. 1992). Since this Court finds that none of Defendant's individual issues complained of are meritorious, the cumulative amount of alleged errors cannot merit relief.

---

[34] PCRA Hearing Tr., pg. 57-58, October 23, 2017.
[35] *Id.* at 24-25 and 45-46 and 71.

17

Trial Counsel is presumed to have been effective. Defendant has failed to meet his burden of proving trial counsel was ineffective such that the truth determining process was so undermined that no reliable adjudication could have taken place. Therefore, for all the reasons stated herein, Defendant's Motion for Post Conviction Collateral Relief is denied. Accordingly, the attached Order is entered.

BY THE COURT:

THOMAS R. CAMPBELL
Judge

Date: April 4, 2018

18